Merle Lorraine STAPLES, Sidney Staples and Kenneth Staples, Dependents (Claimants), Appellants,

v.

A. P. GREEN FIRE BRICK COMPANY, a Corporation, Employer (Defendant), Respondent.

No. 29604.

St. Louis Court of Appeals. Missouri.

Dec. 4, 1956.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 3, 1957.

Not to be reported in State Reports.

Van Matre & Van Matre, Mexico, for appellants.

Barnes & Barnes, Mexico, for respondent.

ANDERSON, Presiding Judge.

This is an appeal from a judgment of the Circuit Court reversing an award of the Industrial Commission in favor of claimants. Claim was filed for the death of the employee, Joe Sam Staples, by his widow, Merle Lorraine Staples, and his children, Barbara Jean Staples, Sidney Staples, and Kenneth Staples. The death benefit award was as follows: (1) for burial expenses, the sum of $150; (2) to Merle Lorraine Staples, the sum of $18 per week for 346.8 weeks; (3) to Sidney Staples, the sum of $1 per week for 346.8 weeks; (4) to Kenneth Staples, the sum of $1 per week for 346.8 weeks. The award recited that it was subject to a credit of $2,000 for compensation previously paid by the employer to the employee prior to his death.

The case was tried on an agreed statement of facts. From this document it appears that the employee, Joe Sam Staples, was employed by the A. P. Green Fire Brick Company from June, 1933, to October 8, 1943. During that time said company was a major employer subject to the provisions of the Workmen's Compensation Act. Prior to June, 1933, in accordance with the provisions of Section 287.020(4), RSMo 1949, V.A.M.S. the employer filed with the Workmen's Compensation Commission a written notice that it elected to bring itself, with respect to occupational diseases, within the provisions of the Workmen's Compensation Act. It thereafter kept posted in a conspicuous place on its premises a notice thereof as furnished by the Commission. Joe Sam Staples remained in the employer's service for more than thirty days after the posting of such notice, and did not at any time reject the provisions of the Act with respect to occupational diseases.

During the course of his employment, and as a result thereof, Staples contracted silico-tuberculosis. This disease became reasonably discoverable and was, in fact, discovered by Staples on or about the 8th day of October, 1943; and, as a result of said occupational disease, the employee sustained compensable injury and disability on said 8th day of October, 1943. Thereafter, Staples continued to suffer from said disease, which became progressively worse until it caused his death on June 28, 1954. He was forty-four years old at the time of his death.

On November 18, 1943, a final compromise settlement was entered into between the employer and employee. This settlement agreement provided for a lump sum payment of $1,960, which, with $40 compensation previously paid, aggregated the sum of $2,000. This settlement was duly presented by the parties to a referee of the Commission on November 18, 1943, and was duly approved by said referee, acting for and in behalf of the Commission. The widow and dependent children, claimants herein, were not parties to this compromise settlement. In accordance with said compromise settlement the employer paid to the employee on November 19, 1943, the sum of $1,960, in full payment and discharge of said compromise settlement.

The average weekly earnings of the employee during the year immediately pre-

ceding the injury and disability of October 8, 1943, was $34.67, two-thirds of which amounts to $23.12. The maximum weekly compensation rate at said time was $20, and the maximum burial expense payable at the time Joe Sam Staples last worked for the employer was $150. The widow, Merle Lorraine Staples, has, in fact, expended an amount in excess of that sum by way of burial expense in connection with the death of her husband.

The employee did not work for the employer after October 8, 1943. He worked for the O'Brien Transfer Company for approximately two years, beginning in December, 1943. He left the employ of the latter company in November, 1945, and became employed by the Crown Laundry Company of Mexico, Missouri, until sometime in April, 1946, at which time the employee went to Kansas City where he worked as a carpenter for a few months, and after that he returned to Mexico and was employed by the O'Brien Transfer Company up to October, 1948, and then worked for Orscheln Trucking Lines from October, 1948, to June, 1950.

As a result of the silico-tuberculosis contracted by Joe Sam Staples while in the employ of A. P. Green Fire Brick Company, the said Joe Sam Staples was wholly disabled, and unable to work from July 28, 1950, until the date of his death on June 28, 1954. He left surviving him his widow, Merle Lorraine Staples, and three children—Barbara Jean Staples, born July 6, 1934; Sidney Staples, born February 3, 1945; and Kenneth Staples, born January 3, 1947.

By its answer, the employer interposed the defenses: (1) that the present claim was barred by reason of the fully executed and performed compromise settlement of November 18, 1943; (2) that the claim of the widow and children was barred by the statute of limitations, to wit, Sections 287.430 and 287.020 RSMo 1949, V.A.M.S.; and (3) that the death of the employee, not having resulted within 300 weeks from October 8, 1943, the date on which the employee's silico-tuberculosis became reasonably discoverable and his disability began, said employee's death was not "death" within the meaning of the Missouri Workmen's Compensation Act, Section 287.020.

It was the position of the claimants, both before the Commission and in the Circuit Court, that: (1) under the Workmen's Compensation Law the compromise settlement of November 18, 1943, between the employer, A. P. Green Fire Brick Company, and the employee, Joe Sam Staples, did not bar the rights of his dependents to recover for the death of said employee which resulted from occupational disease which arose out of and in the course of the employment; (2) that the claim for compensation for death was not barred by the provisions of Sections 287.430 and 287.020 RSMo 1949, V.A.M.S.

The judgment of the Circuit Court, reversing the award of the Commission, was as follows:

"Cause having been fully considered, the Court finds: that 'accident' as used in Sec. 287.020(4) R.S.Mo. [V.A.M.S.], in so far as a death from an occupational disease is concerned, means an occurrence giving rise to compensable disability, and that the date of such occurrence herein is agreed to be October 8, 1943; that therefore employee's death did not occur within 300 weeks after the accident and there is no basis for the right to compensation to claimants.

"Ordered that award of Industrial Commission be and the same is hereby reversed with directions to enter a new award in favor of employer and against claimants."

It is urged that the court misinterpreted the law in holding that because the employee's death did not occur within 300 weeks from October 8, 1943, claimants were not entitled to recover. In support of this

contention it is argued that the three hundred weeks mentioned in Section 287.020(4) does not apply to death occurring from occupational disease for the reason that the limitation so prescribed applies only to death occurring after an accident, as that term is defined by Section 287.020(2).

The obligation of the employer under the Workmen's Compensation Law, as originally enacted, was to furnish compensation "for personal injury or death of the employee by accident arising out of and in the course of his employment." Section 287.120.

In Section 287.020(2) the word "accident" is defined as follows: "The word 'accident' as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury."

By Section 287.020(4) it is provided that the word "death", when mentioned as a basis for the right to compensation, means only death resulting from violence and its resultant effects occurring within 300 weeks after the accident.

By Section 287.020(3) it is expressly provided that the terms "injury" and "personal injury" should not be construed to include occupational disease in any form.

In 1931 the General Assembly amended the above section of the Act by providing that an employer could elect to bring himself under the Act with respect to occupational diseases. Laws 1931, page 382. There was no amendment of Section 287.120 which defines the obligation of the employer to be the furnishing of compensation for personal injury or death by accident arising out of and in the course of the employment. Nor did the amendment make any change in the definitions contained in Section 287.020. There was no definition of "occupational disease". The amendment merely associated occupational disease and its consequences with injury or death by accident, thereby manifesting a legislative intent to regard disability from such disease as an industrial accident—not in the sense as theretofore defined, but in a broad sense as an undesigned, unexpected, and unfortunate occurrence of an afflictive nature. The context of Section 287.020(4) requires such a construction in order that the terms of the law may be applied in all its aspects to industrial disease.

An analogous situation was presented to this court in Renfro v. Pittsburgh Plate Glass Co., 235 Mo.App. 226, 130 S.W.2d 165. In that case the court was considering the time when the statute of limitations for the filing of claims began to run in an occupational disease case. The statute (now Section 287.430) provided that no proceeding for compensation should be maintained unless a claim be filed within six months of the injury Section 287.020 defined injury as violence to the physical structure of the body and such disease as results therefrom, and further provided that said term should not be construed to include occupational disease. Under this definition there could be no injury in an occupational disease case, and hence no applicable statute of limitations. We held, however, that it was the duty of the court to determine and apply the meaning of the term injury, as used in Section 287.430, in connection with occupational disease, even though said term was not originally intended to apply to such cases. We then held that the claimant in an occupational disease case suffers injury which starts the running of the statute when the disease from which he suffers causes disability.

Failure to apply the Renfro doctrine in construing terms "accident", "injury", and "death" in occupational disease cases would result in holding that in such cases there is no statute of limitations, no limitation with respect to the time of death in relation to disability, and no necessity of notice under Section 287.420. We do not believe the lawmakers intended such result.

In occupational disease the occurrence of disability is the unexpected and unforeseen event, or accident, which gives rise to liability under the Act. In the case at bar the date of that occurrence was October 8, 1943. The employee's death did not occur within 300 weeks after said occurrence. For that reason, claimants are not entitled to recover.

The judgment appealed from is affirmed.

MATTHES, J., and ELMO B. HUNTER, Special Judge, concur.