Merle Lorraine STAPLES, Sidney Staples and Kenneth Staples, Dependents, Claimants, Appellants,

v.

A. P. GREEN FIRE BRICK COMPANY, a Corporation, Employer, Respondent.

No. 46071.

Supreme Court of Missouri, En Banc.

Dec. 9, 1957.

458

Van Matre & Van Matre, Mexico, for appellants.

Barnes & Barnes, Mexico, for respond-.ent.

EAGER, Judge.

This case was brought here by order of transfer from the St. Louis Court of Appeals. Its opinion is reported in 296 S.W.2d 498.

The appeal involves a claim for death benefits by a widow and children under the Workmen's Compensation Act. The death resulted from silico-tuberculosis. The Referee and the Industrial Commission awarded claimants a total of $7,086, payable in instalments, subject however, to a deduction of $2,000 for compensation previously paid to the employee. The circuit court reversed this award, with directions to the Commission to enter an award in favor of the employer. The claimants appealed.

The parties very frankly stipulated the facts before the Commission, thus relieving all concerned of much effort and inconvenience; and, since the issues here are very narrow, it will not be necessary to review in detail the claim filed or the defenses originally made. It is conceded that the employer and employee were operating under the Act, both as originally enacted and as amended in 1931 with reference to occupational disease by an addition to paragraph 4 of § 287.020 (all statutory references are to RSMo 1949, and V.A.M.S.). No point is made on the amount of the award.

The employee, Joe Sam Staples, was employed by A. P. Green Fire Brick Company, the self-insured employer, from June, 1933, until Oct. 8, 1943. In the course of that employment, and arising out of it, he contracted silico-tuberculosis; this became "reasonably discoverable" and was, in fact, discovered by him on or about Oct. 8, 1943, and at that time, as stipulated, he sustained "compensable injury and disability" as a result of such occupational disease. The employee was paid compensation of $40, and on Nov. 18, 1943, he entered into a compromise agreement with the employer (regularly approved by a Referee of the Commission and made in view of a dispute as to the

nature, extent and possible duration of the disability) by virtue of which he was paid an additional sum of $1,960, and he thereby released all his claims. The present claimants were not parties to that compromise, and, in fact, the two minor sons were born later. This employee was never thereafter in the employ of the employer, but from Dec., 1943, until June, 1950, he worked more or less continuously for other employers, although it is stipulated that he continued to suffer from silico-tuberculosis and that it became progressively worse. In June, 1950, he became wholly disabled and did no further work prior to his death on June 28, 1954. The present claimants filed their claim on Aug. 26, 1954, within approximately two months after the death.

The employer has briefed here two defenses: (1) that a discovered, disabling, compensable occupational disease constitutes an "accident" within the meaning of § 287.020 (4), and that since the death did not occur within 300 weeks after Oct. 8, 1943, there was no compensable death within the meaning of that statute or of the Act, and that recovery is barred; (2) that the record does not properly show the necessary elements of dependency as to any of the claimants. Originally, the employer also relied on the compromise agreement and release of the employee as a defense to the present claim, and upon the fact that the present claim was not filed within one year after a compensable injury appeared, within the meaning of § 287.430. These latter defenses have now been abandoned and it will not be necessary to discuss them.

The appellants (claimants) insist: that the 300 weeks' limitation upon the time of death, imposed by § 287.020(4), does not apply to deaths resulting from occupational disease because that limitation is restricted to deaths from "accident," as the latter term is defined in paragraph 2 of the section; and, of course, they insist also that the claimants are proper dependents under our Act. For a clearer under-standing of the problem we quote here paragraphs 2 and 4 of § 287.020 which are directly involved, and also paragraph 3 which will be discussed:

"2. The word 'accident' as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury.

"3. The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The said terms shall in no case except as herein provided be construed to include occupational disease in any form, nor shall they be construed to include any contagious or infectious disease contracted during the course of the employment, nor shall they include death due to natural causes occurring while the workman is at work.

"4. 'Death' when mentioned as a basis for the right to compensation means only death resulting from such violence and its resultant effects occurring within three hundred weeks after the accident; provided, that nothing in this chapter contained shall be construed to deprive employees of their rights under the laws of this state pertaining to occupational diseases, [unless the employer shall file with the commission a written notice that he elects to bring himself with respect to occupational disease within the provisions of this chapter and by keeping posted in a conspicuous place on his premises a notice thereof to be furnished by the commission, and any employee entering the services of such employer and any employee remaining in such service thirty days after the posting of such notice

shall be conclusively presumed to have elected to accept this section unless he shall have filed with the commission and his employer a written notice that he elects to reject this act]".

■ Paragraphs 2 and 3, just quoted, and that part of paragraph 4 down to the brackets shown above, were parts of the original enactment of 1925 (although under different arrangement), which was adopted by the people of Missouri upon referendum, on Nov. 2, 1926 (Laws 1927, pp. 490–522). Those parts of paragraph 4, supra, which are here shown in brackets were added by amendment enacted in 1931. (Laws 1931, pp. 382–384.) This, strangely, is still the only provision of our Act providing directly or by inference for compensation under the Act by reason of occupational diseases. When the amendment of 1931 was enacted the legislature made no express change in the definitions now shown in paragraphs 1, 2, 3 or 4. It is entirely clear that, when death results from a true "accident," such as a fall, a crushing blow, etc., such death must occur within 300 weeks "after the accident" in order to be compensable. Such is the express enactment of paragraph 4, § 287.020. Claimants here say, however, that death from occupational disease (which this death is stipulated to have been) is not a death from "accident," as that term is defined in paragraph 2, and that, therefore, the requirement that the death shall occur within 300 weeks "after the accident" does not apply; and consequently, that such death, occurring at any time, is compensable. In other words, they say that this death is one from disease, as distinguished from the statutory "accident," that the compensable injury resulting from occupational disease is not "an unexpected or unforeseen event happening suddenly and violently" which is required to constitute an accident, and that an accidental event is an occurrence which is at least in part external to the body itself. In support of those contentions claimants cite: Meldrum v. Southard Feed & Mill Co., 229 Mo.App. 158, 74 S.W.2d 75; Joyce v. Luse-Steven-

son Co., 346 Mo. 58, 139 S.W.2d 918; State ex rel. Hussmann-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40; and particularly McDaniel v. Kerr, 364 Mo. 1, 258 S.W.2d 629. The distinctions between those cases and the present case will, we think, appear more clearly as our discussion proceeds. None of those cases involved a recovery of compensation for occupational disease, nor were any of the claims made on that theory. In Meldrum it was held that pneumonia, a heart condition, and death, allegedly brought on by exposure to the weather (not being a special or peculiar exposure due to the employment) and by the accumulated exertions of the employee's work, did not constitute an "accident." In Joyce, it was held that the contraction of pneumonia from working in a damp subbasement, in the ordinary course of work, did not constitute an accident; in that case the court said that the "event" which constitutes an accident is a happening or occurrence "in part at least external to the body itself." [346 Mo. 58, 139 S.W.2d 920.] In Hussmann, a heart attack occurring upon lifting a heavy bucket in the usual course of work, was held not to constitute an accident. The Kerr case, strongly relied on, was a common-law action for negligence; plaintiff had been employed to knock the old plaster off the walls in the renovation of a building, and he had sustained a lung abscess, necessitating the removal of a lung. The evidence tended to show negligence on the part of the employer in permitting and requiring him to breathe great quantities of dust and in failing, on request, to furnish him a respirator or some type of protective apparatus. One question presented there was whether our Workmen's Compensation Act barred the common-law action. This court noted: that no claim was made of compensable injury from occupational disease under the Act, or even under the general statutes regulating industrial or work hazards; and that the case was not submitted upon a theory of occupational disease, but rather as a case of personal injury from negligence. It is true that the court there held

that the injury was not from "accident" within the general meaning of the Workmen's Compensation Act, noting that the injury there resulted from intentional acts, not unforeseen or unexpected, and performed in the usual progress of the work; also, that the injury was not from an event happening suddenly and violently. But the court was there construing the term "accident" from a standpoint wholly different from that in which we must approach and construe the term as used (specifically) in paragraph 4 of § 287.020. In that case the occupational disease aspect was wholly eliminated. This distinction applies with equal force to the Meldrum, Joyce and Hussmann cases.

We note in passing that in various other cases, our courts have liberalized the statutory definition of accident, even as applied otherwise than in occupational diseases. Rinehart v. F. M. Stamper Co., 227 Mo.App. 653, 55 S.W.2d 729 (pneumonia from working in refrigerator in damp clothing); Smith v. Federated Metals Corp., 235 Mo. App. 297, 133 S.W.2d 1112 (lead poisoning); Schulz v. Great A & P Tea Co., 331 Mo. 616, 56 S.W.2d 126 (heat prostration); Vogt v. Ford Motor Co., Mo.App., 138 S.W.2d 684 (activation of allergic bronchial asthma by breathing fumes during employment, with occupational disease expressly ruled out); Downey v. Kansas City Gas Co., 338 Mo. 803, 92 S.W.2d 580 (continued exposure of eyes to chimney soot, by rubbing face with hands); McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S.W.2d 149 (breathing smoke and gas for 12 days). As will appear from these cases, the terms "event," "suddenly" and "violently" have been treated with considerable elasticity in determining whether an "accident" had occurred. By citing these cases we do not mean necessarily to approve all that is said in them. They are not controlling or necessarily persuasive here, for we are concerned only with a construction of § 287.020 as applied to an injury from occupational disease.

■ The rule has been adopted in Missouri that in occupational disease claims (in the absence of a definition in the 1931 amendment or elsewhere in the Act) the "injury" from which the time for filing claims begins to run (§ 287.430) occurs when it becomes reasonably discoverable and apparent that a compensable injury has been sustained. Renfro v. Pittsburgh Plate Glass Co., 235 Mo.App. 226, 130 S.W.2d 165, 171, and cases cited; Leonard v. Fisher Body Co., Mo.App., 137 S.W.2d 604, 611; Cleveland v. Laclede-Christy Clay Products Co., Mo.App., 129 S.W.2d 12; and usually this is when some degree of disability results, which can be the subject of compensation under the Act. This rule gives the employee every possible advantage in the time required for filing his claim. Claimants here do not deny that a compensable "injury" occurred, for without that, there clearly could be no recovery. In fact, the occurrence of a "compensable injury" was stipulated, and its date fixed as Oct. 8, 1943, the date the employee quit work for the employer.

■ In Renfro v. Pittsburgh Plate Glass Co., 235 Mo.App. 226, 130 S.W.2d 165, the court announced the rule stated above with reference to the beginning of the time for the filing of a claim in an occupational disease case. In that connection it became necessary to construe the word "injury," as used in § 287.430; "injury" is defined in subparagraph 3 of § 287.020, as quoted above. That definition not only states that injury "shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom," but it expressly excludes "occupational disease in any form * * *" except "as herein provided." This definition was contained in the original Act and there was certainly nothing in it then which might be considered as a provision for the coverage of occupational diseases. The legislature failed to re-define the term "injury" when the occupational disease amendment was

enacted. In the Renfro case the court necessarily departed from the strict terms of the statutory definition in so finding an "injury" and a time of injury in occupational disease cases, and it either disregarded (as of necessity) that part *excluding* occupational disease, or it relied upon the qualification "except as herein provided," considered in the light of the 1931 amendment. The determination of an injury and of a date of injury was also necessary there in order to fix a period for the computation of the average weekly wage earned during the preceding year and the amount of compensation to be paid. The court noted that the definitions in question were not originally intended to apply to occupational diseases, but held that, since the amendment did not expressly change the definitions or even define "occupational disease," it became " * * * the duty of the courts to determine and apply the meaning of the terms mentioned * * * in connection with occupational disease cases, * * *." 130 S.W.2d loc. cit. 171. That opinion, and divers others, have recognized over the years since 1931 the legislative mandate on occupational disease, and both the Commission and the courts have allowed weekly compensation to employees therefor. In so doing the strict definition of "injury" in § 287.020(3) has necessarily been enlarged, expressly or inferentially; it has thus been construed in harmony with the purpose of the amendment. The principle is strictly applicable here. Counsel for claimants argue that the court in the Renfro case was only construing a section (287.430) containing the word "injury," and not one including a definition of "accident," as we are required to do. That is true, but, as stated, the logic and basic principle is applicable here, and we agree with it. The legislature has enacted an amendment for the very purpose of authorizing employers and employees to elect to bring occupational disease claims and injuries under the Act, and, respectively, to pay and receive compensation therefor, in lieu of all common-law rights of action. The very bringing of such claims under the Act presupposes an "injury," and, therefore, an injury has generally been recognized as present and existing in all compensable occupational disease cases. Generally, in compensation cases a compensable injury presupposes an "accident," for an injury is the result of an accident. Renfro, supra; State ex rel. Hussmann-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40. It is almost unthinkable that the legislature would adopt the amendment in question without contemplating and intending that its previously enacted definitions be broadened to fit the necessities of occupational disease claims. Claimants necessarily rely upon § 287.020, since it contains the only definition of compensable death; we do not think they may do so, and still insist that an integral limitation, applicable to all other cases and claims, should be wholly eliminated in so far as it might apply to occupational diseases. Nor do we think it logical to hold that the definition of "injury" (§ 287.430) may be broadened to give an occupational disease claimant the benefit of the existence of an "injury" and of a more liberal time for filing claim, and yet to hold that the statutory meaning of "accident," as contained in paragraph 4 of § 287.020 may not likewise be liberalized.

Another consideration occurs to us which seems highly material, if not controlling; in the definition of "accident" (§ 287.020, paragraph 2) it is said that the word "accident * * * shall, *unless a different meaning is clearly indicated by the context,* be construed to mean * * *." We believe, and hold, that the word "accident," as it appears in the context of paragraph 4, clearly indicates a broader meaning than that specifically defined in paragraph 2. As well stated by the Court of Appeals in this case (296 S.W.2d loc. cit. 501): " * * * The context of Section 287.020(4) requires such a construction in order that the terms of the law may be applied in all its aspects to industrial disease." We hold, therefore, that in so far

as it concerns deaths from occupational disease the term "accident" must be construed as including a compensable disability resulting from occupational disease and causing death. The ruling announced might be equally applicable to "accident" as applied to compensable disability from occupational disease, without death, but such a ruling is outside the scope of the issues actually before us. Also, in the previous recognitions of an "injury" in such cases, the courts have probably made that ruling unnecessary. We have sought to avoid the term "industrial accident" and such other terms as might further extend the definition or construction of "accident" in nonoccupational disease cases. It might not be inappropriate to describe an accident in occupational disease cases (as the Court of Appeals did) as "an undesigned, unexpected, and unfortunate occurrence of an afflictive nature," but we hesitate to add to the wording of paragraph 2 anything which might extend its scope generally, since our discussion and rulings are to be understood as confined solely to occupational disease claims.

There is no indication in the Act that the legislature did not intend for all occupational disease claims to be subject to the same conditions and limitations as other claims. The only definition of a compensable death (paragraph 4, § 287.020) contains this 300 weeks' limitation as an integral part of the very definition; and the only provision in the whole Act authorizing any compensation for occupational disease is contained in that same paragraph. Claimants cannot rely upon the Act generally, or this paragraph in particular, and, at the same time, avoid its limitations.

The argument advanced that there is not the same necessity for a limitation upon the time of death in order to determine proximate cause in occupational disease cases as there is in cases of true accident, is one which might better be considered by the legislature. There is nothing in the statutes, as not constituted, which convinces us that the legislature intended that distinction. Counsel say, also, that the Court of Appeals has legislated judicially in construing § 287.020 as it has done (and as we are now doing), i. e., that it has changed the meaning of "accident" as defined therein. We do not think so. That court, and this court, have merely performed the duty "to determine and apply the meaning of the terms mentioned * * * in connection with occupational disease cases" (Renfro, 130 S.W.2d loc. cit. 171) where, since the original enactment of the statute, the legislature has injected an amendment which must necessarily broaden the meaning of certain terms, if the amendment is to be given any effect at all. The qualification contained in the paragraph defining "accident" cannot properly be overlooked; it constitutes an express recognition of the fact that there might be a necessity for a broader definition. That necessity arose when the amendment was enacted.

Upon appellants' contentions it might be held with equal logic that there could be no recovery of weekly compensation at all in occupational disease cases, for § 287.120(1) which provides the basic right of recovery of compensation under the Act specifies that compensable injury or death shall be "by accident." Thus, if we return to the definition of § 287.020(2) and follow the argument that death from occupational disease is not death from "accident," we would eliminate, by analogy, all weekly compensation for occupational disease. Such a holding would clearly thwart the whole purpose of the 1931 amendment, and the mere statement of this analogy illustrates the weakness of appellants' contentions.

■ Of course, a liberal construction of the Act in favor of claimants is required, but this principle may not be extended so far as to destroy what we believe to be a "clearly indicated" intent of the legislature. The legislature may, if it sees fit, clarify this part of the Act, which might be helpful in various aspects.

Since the death did not occur within 300 weeks "after the accident," which, under our interpretation, occurred on Oct. 8, 1943, there can be no recovery. In view of the foregoing it is not necessary to consider the status of any of the claimants as proper dependents of the deceased employee. The judgment of the circuit court is affirmed.

All concur except HOLLINGSWORTH, J., not sitting.