Rozanne HUNDLEY (Employee), Appellant,

v.

The MATTHEWS HINSMAN COMPANY (Employer), and American Insurance Company (Insurer), Respondents.

No. 23782.

Kansas City Court of Appeals.

Missouri.

June 3, 1963.

Claude L. Schenck, R. A. Kelpe, Kansas City, Walter Klamm, Kansas City, Kan., for appellant.

David H. Clark, Kansas City, for respondent.

HUNTER, Judge.

This is an appeal by Rozanne Hundley, employee, from a judgment of the Circuit

Court of Jackson County in favor of The Matthews Hinsman Co., employer, affirming the decision of the Industrial Commission of Missouri denying recovery to her for her disability resulting from two herniated discs suffered in a fall on the employer's premises.

It is conceded that the parties are subject to the Workmen's Compensation Law, and that the injury arose out of and in the course of her employment. The defense upon which the claim was ruled is the special statute of limitations set out in Section 287.430 RSMo 1959, V.A.M.S., "No proceedings for compensation under this chapter shall be maintained unless a claim therefor be filed with the commission within one year after the injury or death, or in case payments have been made on account of the injury or death, within one year from the date of the last payment. * * *"

The essential facts are undisputed. On January 23, 1959, as she entered her place of employment Mrs. Hundley unexpectedly slipped on some ice and fell hard to the vestibule floor striking and injuring her back. The fall caused immediate severe pain throughout the lower part of her back. She was eventually assisted to her feet and sent by her employer to Research Hospital. There she was admitted, x-rayed, otherwise examined and treated by Dr. G. L. Williamson, an orthopedic physician employed on behalf of the employer-insurer, who paid his bill amounting to $43.00. On January 26, 1959, the employer filed with the Division of Workmen's Compensation a report of injury describing Mrs. Hundley's injury as a "sprain".

While in Research Hospital heat and other therapy treatments were administered to Mrs. Hundley's low back area. She was dismissed from Research Hospital on January 30, 1959, and went to Dr. Williamson who prescribed a corset type brace for her to wear over her low back until such time as she wished to discard it. This brace cost $8.36 which sum was paid by the employer-insurer. On February 5, 1959, she returned to her employment.

During the time she was in the hospital Mrs. Hundley's low back area continued to pain her. This pain lessened during her hospital confinement and practically disappeared by the time she completed follow-up checks at the office of Dr. Williamson who last saw her and discharged her on February 23, 1959, subject to the mentioned wearing of the brace. When she quit wearing the brace about three months after the accident her back was apparently getting along real well, "it wasn't bothering" her and she was experiencing no pain.

Sometime in January, 1960, she first felt a "catch" in her back. In a matter of days she experienced additional intermittent "catches" to the extent that in March, 1960, when she went to see a chiropractor for a stiff neck condition (unrelated to her accident) she consulted him about the "back catches" which were occurring more frequently. Awhile after this visit the catching sensations were accompanied by by pain in her right hip and upper right leg with a tingling sensation as though her foot were asleep.

On July 24, 1960, her back bothered her quite a bit. The following morning she had excruciating pain and could hardly get out of bed or move. She tried to contact Dr. Williamson and when she learned he couldn't see her, she called her family physician, Dr. Berger, who immediately diagnosed her condition as "a surgical back, it appears to be a disc."

Dr. Berger called in Dr. Drisko, an orthopedic surgeon, and ordered Mrs. Hundley to St. Mary's Hospital. There a myelographic study was made confirming two herniated discs between L4 and 5 and L5–S1. On July 28, 1960, Dr. Drisko operated, found the two mentioned herniated discs and fused the back bone at that place. Mrs. Hundley experienced a normal recovery from the surgery, and Dr. Drisko rated her disability at 30 per cent permanent and partial of the body as a whole.

Dr. Harold Zuber, who examined her on behalf of the employer-insurer, rated her as having a permanent partial disability of 15 to 20 per cent of the body as a whole.

The referee's finding read: " * * * the claim for compensation filed by the employee was not filed within one year after the date of the injury, nor was said claim for compensation filed within one year after the furnishing of medical treatment or the payment thereof.

"I further find that the claim for compensation was not filed by said employee within one year after the date when it became reasonably discoverable and apparent that *a compensable injury had been sustained* by said employee.

"Compensation therefore must be and the same is hereby denied." (Italics ours.)

On review, the Industrial Commission found the award of the referee to be correct in all respects, adopted his findings of facts, his rulings and conclusions of law and awarded "no compensation", saying, "In affirming said award of referee, we find controlling the cases of Crites v. Missouri Dry Dock Company, Mo.App., 348 S.W.2d 621, l. c. 623; and Conn v. Chestnut Street Realty Co., 235 Mo.App. 309, 133 S.W.2d 1056, l. c. 1058."

The single question presented on this appeal is essentially one of law; namely, on the record before it did the Industrial Commission misinterpret and misapply the one year special statute of limitations by holding that it commenced to run from the time it became reasonably discoverable and apparent that appellant had suffered *a* compensable injury rather than from the time it became reasonably discoverable and apparent that she had suffered the discs injury.

It is claimant's contention that the discs injury was latent and did not become reasonably discoverable or apparent until on or about July 25, 1960, when she experienced excruciating pain and was unable to continue her employment. It was then that her injury was first diagnosed as probably a disc injury by Dr. Berger. Claimant reasons that symptoms indicative of a disc injury did not appear until after January, 1960, when she commenced to have catches in her back, followed by pain radiating into the right hip and leg with a feeling the leg was asleep, which symptoms gradually grew in severity until July 25, 1960, when they became disabling. Claimant notes that Dr. Williamson, the company's doctor, apparently felt her injury was only a strain and did not diagnose or even suspect a disc injury or he would not have discharged her on February 23, 1959, but would have made further tests, such as myelogram. She insists her claim should not be barred when a qualified physician is unable to diagnose or discover her latent injury within the period of limitations as interpreted and applied by the commission.

It is the employer-insurer's contention that claimant sustained an accident causing *a* compensable injury on January 23, 1959, to her low back area, and that her claim for compensation was not filed until more than one year after company provided treatment; more than one year after payment of all bills therefor by the company and more than one year after she had voluntarily quit wearing the back brace provided by the company's doctor.

In the Crites case, supra, relied upon by the commission, claimant on August 15, 1956, unexpectedly was subjected to the full weight of a 500 lb. steel shaft, jerking him down and injuring his back. He suffered immediate pain but continued to work. He thought he had suffered a strained muscle or ligament and that the matter would correct itself in time. There were weeks, and sometimes a month, when he would suffer no discomfort from his back. In the latter part of 1957 the intermittent pain started getting worse. In 1958 it caused him to miss some time from work. At that time he asked his employer for medical aid and was refused. In May 1958, he consulted a doctor who examined him,

obtained a myelogram and diagnosed a ruptured disc between the 4th and 5th lumbar. The Industrial Commission found a compensable injury (which it defined as one which disables an employee either totally or partially from the performance of his work) became reasonably discoverable in November, 1957, when he first sought medical aid by consulting a chiropractor because his back symptoms had worsened so much, and ruled the claim filed on October 4, 1958, was timely filed. The circuit court and the St. Louis Court of Appeals affirmed.

Apparently of persuasive force and applicability to the Industrial Commission is that part of the Crites case opinion which after quoting from the statute of limitations, said: "The foregoing has been construed to mean that the limitation placed upon the time in which the employee may file a claim begins to run when it becomes reasonably discoverable and apparent that *a* compensable injury has been sustained." (Italics ours.)

In the instant case Mrs. Hundley sustained *a* compensable injury at the time of her accident for she was disabled from performing her work for approximately two weeks, and the commission and circuit court have literally applied the above quoted language of the Crites case to the facts of this case. Apparently if in the Crites case claimant when injured had been caused to miss even one day's work he would have been precluded from recovery by the Industrial Commission on the theory he then sustained *a* compensable injury even though believed by all to be a mere muscle strain.

In the other case relied upon by the Industrial Commission, Conn v. Chestnut Street Realty Co., supra, on May 21, 1936, claimant in opening a window wrenched her right arm between the elbow and wrist. She had a minute's stinging pain which then went away. A day or two later the arm swelled and she rubbed liniment on it. The swelling disappeared in a few days and a lump appeared on her arm about the size of a marble, which grew larger as time went on. On January 7, 1937, the lump was about the size of an orange and she consulted her doctor who ordered the tumor removed. On July 21, 1937, she began to have pain in her arm so she went to the hospital where the tumor was diagnosed to be cancerous. It was necessary to amputate her arm. She had continued to work until the date of the amputation. She filed her claim before the commission on September 8, 1937. At that time the limitations period was six months, and the commission denied compensation ruling her claim was not timely filed. The St. Louis Court of Appeals affirmed, saying loc. cit. 1058 of 133 S.W.2d, "* * * a claim must be filed within six months after it becomes reasonably discoverable and apparent that *an injury* has resulted from the accident *for which the employee is entitled to compensation.* (Italics ours) * * * In this case there is no escape from the conclusion that an injury was not only discoverable, but was plainly apparent within a day or two after the accident when the arm began swelling, * * *. If claimant had heeded the doctor's advice, and had the lump removed, it might have cured the effects of the injury; and clearly her employer was liable for the medical, surgical, and hospital treatment in removing the lump."

As we understand the Industrial Commission's reliance upon the Conn case, it is that claimant suffered a compensable injury (even though its full effects may not have been known) more than six months before she filed her claim and, hence, the statute of limitations began to run from the time she suffered a compensable injury.

Other cases containing language indicating the statute of limitations runs from the time *a* compensable injury is reasonably discoverable or apparent are Staples v. A. P. Green Fire Brick Company, Mo. Sup., 307 S.W.2d 457, 461 ("* * * in occupational disease claims * * * the 'injury' from which time for filing claims begins to run (§ 287.430) occurs when it

becomes reasonably discoverable and apparent that a compensable injury has been sustained. * * * And usually this is when some degree of disability results, which can be the subject of compensation under the Act.") Wheeler v. Missouri Pacific R. Co., 328 Mo. 88, 42 S.W.2d 579, 582, ("* * * in cases where latent injuries are involved the claim must be filed within six months from the time it becomes reasonably discoverable and apparent that *a* compensable injury has been sustained."); Dees v. Mississippi River Fuel Corporation, Mo.App., 192 S.W.2d 635, 641, ("the one year limitation statute would not begin to run until after the accident and a resulting injury which caused a compensable disability."); Cleveland v. Laclede Christy Clay Products Co., Mo. App., 129 S.W.2d 12, 16 ("* * * from the time it becomes reasonably apparent, and discoverable, that the employee has sustained a compensable injury."); Bridges v. Fruin-Colnon Const. Co., Mo. App., 52 S.W.2d 582, 583 ("* * * from the time it becomes reasonably discoverable and apparent that a compensable injury has been sustained.")

A serious problem is presented by endeavoring to literally and mechanically apply the above type of language, "*a* compensable injury" to the apparently trivial accident involving a seemingly minor yet compensable injury which appears to cure up and later after a year has lapsed from payment of compensation or furnishing of medical, a latent serious injury caused by the same accident becomes apparent or discoverable. In 2 Larson, Workmen's Compensation Law, Section 78.44, pages 274–75, this problem is discussed in connection with the case of Kobilkin v. Pillsbury, 9 Cir., 103 F.2d 667, aff. (mem.) 309 U.S. 619, 60 S.Ct. 465, 84 L.Ed. 983. After noting the general rule allowing recovery, applicable to a latent but undiscoverable condition which manifests itself only after the claim period has run, the author states, "There is no excuse for being flustered by the addition of the fact of payment of

compensation for a lesser disability in the first instance. * * * The entire question is the simple one of whether the claimant had any reasonable occasion to file a claim sooner than he did. If voluntary compensation was paid, this cancels out the initial disability as a reason for filing a claim, and the case becomes identical to any other latent-injury situation. * * * What should he make claim *for*? Surely not for the three-week disability—that was voluntarily paid for; surely not the unknown future disability—simply because it was unknown. What then is a reasonably prudent workman supposed to do when he is receiving compensation voluntarily paid by his employer? [Should he] imagine the most pessimistic and extreme of all possible explanations of his symptons, and file claim at once for all of them. Every pain should be attributed to cancer; every back or leg pain to intervertebral disc herniation or osteomyelitis; every shoulder pain to separation of the bones. It may be doubted whether employers, commissioners and courts would find such an era of compensation practice any more satisfactory than would the claimants. * * * The (result) is clearly out of line with the great majority of latent-injury cases, once it is realized that the imperfect 'knowledge' of the injury is cancelled out by the voluntary payment of compensation."

It is apparent in the case before us that the Industrial Commission has used as its rule of law the broad statement "a compensable injury" contained in so many cases such as those quoted from above and has applied that language literally in the present case and thereby held that the acceptance of the medical treatment and benefits voluntarily paid by the employer-insurer for the "sprained back" caused it to be a compensable injury. It was held the limitations period ran from the date of *that* compensable injury rather than from the time the latent defect (herniated discs) became reasonably discoverable and apparent.

 It is our view that the rule of law should be that urged by Larson. The general objective of the Workmen's Compensation Statute is well known and would seem to be consistent with a recovery in this case. That objective ought not to be emasculated, overridden or unnecessarily restricted by a too technical and impractical decision as to when the one year statute of limitations commences to run on serious latent injuries. Yet we are confronted with the cases cited herein involving factual situations unlike this one, containing general language that seems to govern this case and to support the result reached by the Industrial Commission.

The danger to the employer resulting from so-called stale claims is certainly not as great in the case before us where the accident was timely reported and the company investigated it at least enough to decide to provide medical and other benefits as in that circumstance where the injury appears to be so minor that no compensable injury results at the time of the accident and only becomes discoverable after one year has lapsed. In the latter situation ordinarily there is no investigation by the company for the accident appears trivial and no claim is made. Yet in this latter situation it is the established law in this jurisdiction that there may be a recovery. See, Crites v. Missouri Dry Dock Company, supra and cases cited therein. Additionally, the Industrial Commission which is the acknowledged finder of the facts may protect the employer's interest, where needed, by a proper exercise of its right to judge the credibility of the evidence.

Conceiving that we are not technically bound by any prior decision of our Supreme Court for the reason there is none that is based on facts presenting this precise question, we are persuaded by considerations we believe to be consistent with the basic purpose of the Workmen's Compensation Law to reverse the judgment and to remand this cause to the circuit court with directions that it remand this cause to the Industrial Commission for a rehearing consistent with the view which we have expressed; namely, that if it finds appellant suffered a seemingly minor yet compensable injury for which voluntary compensation was paid which appeared to cure up and later a latent discs injury caused by the same accident became reasonably discoverable or apparent, the one year statute of limitations does not commence to run until such time as claimant's latent disc injury became reasonably discoverable and apparent. On this fact issue, as is the established law, the Industrial Commission is the finder of facts and its finding on this issue if supported by competent and substantial evidence would be binding.

Mindful of the broad language of the mentioned several Supreme Court decisions and numerous St. Louis Court of Appeals decisions appearing to support the Industrial Commission's theory of the law involved, and realizing the public importance of the question involved in this case, we transmit it to the Supreme Court for re-examination of the applicable law. It is so ordered.

All concur.