Lone MYERS, Respondent,

v.

RIVAL MANUFACTURING COMPANY and American and Foreign Insurance Company, Appellants.

No. 25196.

Kansas City Court of Appeals.

Missouri.

June 2, 1969.

Paul H. Niewald, Gordon, Adams, Niewald & Risjord, Kansas City, for appellant.

Dean Frazier, Kansas City, for respondent.

JAMES W. BROADDUS, Special Commissioner.

This is a proceeding under the Workmen's Compensation Act, the appeal being by the employer, Rival Manufacturing Company and the insurer, the American and Foreign Insurance Company, from the judgment of the circuit court affirming an award of the Industrial Commission in favor of the employee, Lone Myers, for compensation covering 20 weeks temporary disability at $47.50 per week amounting to $950, and 75 weeks, 18.75 percent permanent partial disability to the body as a whole, amounting to $3,187, aggregating $4,137.

Respondent Myers started working for Rival Manufacturing Company in 1943, and remained in its employ for approximately 22 years. His duties were in the paint department until the end of the war, and after that time he worked in the polishing and grinding department, where metal dust would fly into the air.

Employee's only sickness during the time of his employment was one period of pneumonia. In the spring of 1965, a State Mobile Chest Unit took a routine X-ray of his chest and he was advised by the company nurse that he "had a condition" in his chest. As a result of this advice employee was examined by his personal physician, Dr. Sperry, and he was also examined by the company physician, Dr. Masucci. As a result of these examinations and at his own choosing, he made arrangements to be examined by Dr. Florence MacInnis. He was first examined by Dr.

MacInnis on May 25, 1965, and as a result of this preliminary examination, he was placed in St. Mary's Hospital for diagnostic studies betwen the dates of June 2, 1965 and June 12, 1965.

In relating his case to Dr. MacInnis and other examining physicians employee Myers told each of the doctors that his complaints and chest condition were as the result of his working conditions. He testified the "degreaser unit" around which he had to work gave off fumes and caused him to "sneeze continuously." He did not return to work from the time of his examination on May 25, 1965, until the spring of 1966, with the exception of several days in mid-September of 1965. He stated that during this period of time his condition remained the same; that after he got out of the hospital he felt like he "could do some kind of work"; that neither Dr. Sperry nor Dr. MacInnis told him that he "couldn't work"; that Dr. MacInnis told him that he could wear a mask; that the only thing he knew was that the "degreaser unit" affected him.

Dr. MacInnis stated that in June of 1965, after she completed the diagnostic studies, she concluded that Mr. Myers was disabled from working and so advised him. She further concluded that he was disabled until May of 1966, and that during this period of time she would not permit him to assume any form of work. She made a written report dated June 21, 1965, which gave a diagnosis of sarcoidosis and pulmonary fibrosis. It was her opinion that the sarcoidosis condition was not related to work, but that the additional impression or diagnosis of pulmonary fibrosis was related to industrial exposure and to Mr. Myer's work.

Dr. William Buckingham, a specialist in lung diseases, and who examined Mr. Myers on June 30, 1967, stated that he saw no evidence of disease other than silicosis.

Appellants contend that the claim filed on August 31, 1966, is barred by the statute of limitations. The act provides that no proceeding for compensation shall be maintained unless a claim is filed with the Commission within one year after the injury, or in case payments have been made on account of the injury, within one year from the date of the last payment. Sect. 287.430, V.A.M.S.

The law governing the question here presented is well stated in the case of Ford v. American Brake Shoe Co., Mo. App., 252 S.W.2d 649, where it is said:

"In fixing the time of injury within the contemplation of the statute, the rule is that the limitation period begins to run whenever it becomes reasonably discoverable and apparent that a compensible injury has been sustained, which, in the case of an occupational disease, is the time when the disease has produced a compensable disability (citing cases)" l.c. 651.

However, it is not enough to give rise to a claim that the employee shall have sustained a mere unexplained disability, but instead he must be able to show that he has suffered a compensable disability * * *." l.c. 652.

In the case of Marie v. Standard Steel Works, 319 S.W.2d 871, our Supreme Court at l.c. 880 quotes with approval the language we have set forth from the *Ford* case, *supra*, and says:

"To the same effect this court said in Staples v. A. P. Green Fire Brick Company, 307 S.W.2d 457, 461, an occupational disease case, that 'the injury' from which the time for filing claims begins to run (§ 287.430) occurs when it becomes reasonably discoverable and apparent that a compensable injury has been sustained.

"In the very nature of things the incipience and progress of an occupational disease cannot be pin-pointed as in the case of an accidental injury."

The Commission had a clear conception of the question here involved. This is shown in its Additional Findings of Fact

and Conclusions of Law from which we now quote:

"When the medical evidence contained in this record is carefully considered in the light of the employee's work history, we think there can be no serious question that the employee is suffering from silicosis, an occupational disease, and has incurred by reason of such disease, a permanent partial disability equal to 18.75 per cent to the body as a whole. The employer and insurer, however, have raised the defense that the evidence shows the instant claim to be barred by the one-year statute of limitations, Section 287.430 RSMo 1959, V.A.M.S. Accordingly, it is necessary to address ourselves specifically to this contention.

"If a workman suffers an injury, he has but to show that his injury and resultant disability was caused by an accident which arose out of and in the course of his employment. If an employee is disabled by disease, he must go further and prove that his disablement was the direct result of an 'occupational disease' as that term is contemplated by The Missouri Workmen's Compensation Law. It follows, therefore, that before a workman may intelligently file his claim and prosecute his action, he must be aware of the fact that his disability must have been caused by an 'occupational disease', which is compensable, and not by an ailment which was simply contracted on the employer's premises for which no compensation may be properly allowed. Were it otherwise, would it not be required of all employees not wishing to risk the possibility of their claim being barred, to file a claim for compensation every time they became disabled and unable to work as the result of any ailment contracted on the employer's premises which might ultimately be diagnosed or construed to be an occupational disease? Surely, this is not the intention of the statute in question. It could, however, be the result of an interpretation to that effect.

"An ailment does not become an occupational disease simply because it is contracted on the employer's premises. It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question. There must be a recognizable link between the disease and some distinctive feature of the claimant's job *which is common to all jobs of that sort*. It is not sufficient if the disease is merely associated by way of causation with the employment relationship in general.

"The record in this case clearly reflects that claimant was not aware during the period in question prior to the date he filed his claim for compensation on August 31, 1966, and after he had become disabled and unable to work, of the fact that his disability was a result of an occupational disease and compensable, and not merely the result of an ailment contracted on his employer's premises (which resulted from the failure of the employer to provide a safe place within which to work) which would not be compensable as an occupational disease. Until the claimant was aware of the fact that his disability ensued as a result of an occupational disease for which he could be compensated, can we hold that the statute of limitations began to run against him? We think not. The claimant must have been aware that his disability was caused, not by the breathing of the fumes complained of, but as a direct result of an occupational disease which was a foreseeable consequence of some necessary and distinct aspect of the employee's actual and *ordinary work activities* which was common to all jobs of that sort. Only then would the statute begin to run. This conclusion on our part is consistent with the holding of the Supreme Court of Missouri in Marie v. Standard Steel Works, 319 S.W.2d 871, 880 (1959), to the effect that in the case of an occupational disease the rule is that the limitation period begins to run whenever it becomes reasonably discoverable and apparent that the ailment has produced a 'compensable disability.'

"The question to be resolved, therefore is the date claimant first became aware

**142**

that he had suffered a *compensable disability*, not when he became aware only that he was disabled and unable to work as a result of an ailment (or a series of 'accidents' if you will) contracted on the premises of his employee and which was merely associated by way of causation with the employment relationship in general.

"In search of an answer to our question, one needs only to examine the testimony of claimant's treating physician, Dr. Florence MacInnis, set out in the transcript on pages 154 through 204. Although all of Dr. MacInnis' testimony is pertinent to our inquiry, we have particular reference to the following statements on her part set out on pages 186, 187 and 188:"

The Commission then sets out that testimony and concludes its finding by saying:

"It is obvious from the above testimony that Dr. MacInnis, claimant's treating physician and a specialist in pulmonary diseases, could not be certain of the cause of claimant's condition as late as February 20, 1967. Further, her testimony indicates that she could not be certain as late as November 28, 1967, the date her deposition was taken, whether or not claimant's condition was related to his work. We could not, therefore, find that it became reasonably apparent to claimant that he was suffering from an occupational disease and a compensable disability prior to August 31, 1966, without first finding that he was more knowledgeable concerning pulmonary diseases and the related causes, signs and symptoms thereof than Dr. MacInnis. This we cannot do."

It is clear that the Commission could reasonably have made its findings and reached the result it did; hence the reviewing court may not substitute its judgment on the evidence for that of the Commission. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55, 62;

Franklin v. St. Louis Independent Packing Co., Mo.App., 360 S.W.2d 350, 354.

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

All concur.